ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney
    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone: (510) 637-3723
    Facsimile:  (510) 637-3724
    E-Mail:    Garth.Hire@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KEITH RAMON MAYFIELD, <br><br> Defendant. | NO. CR 15-00290 PJH <br><br> UNITED STATES' SENTENCING MEMORANDUM |

## I. INTRODUCTION

The government recommends and respectfully requests that this Court sentence defendant to a 120-month term of imprisonment, a four-year term of supervised release with conditions to be determined by the Court (and the special conditions agreed to by defendant in his plea agreement), a $300 special assessment, and a money judgment of $50,000. This memorandum is based on the facts set forth in defendant's plea agreement, the Presentence Report (PSR) prepared the United States Probation Office (USPO), and the Affidavit of Federal Bureau of Investigation (FBI) Special Agent (SA) Richard Harvey in support of the Criminal Complaint in this case (Docket No. 12).[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Lead defendant Keith Mayfield (defendant) worked as a Southwest Airlines baggage handler from 2005 to 2015. Beginning in about 2012, defendant abused his position of trust as a baggage handler to smuggle bags containing marijuana around the Transportation Security Administration (TSA) checkpoint at the Oakland International Airport and hand those unscreened bags off to outbound passengers for further distribution in destination cities throughout the United States. Defendant smuggled narcotics in violation of airport security on at least 70 occasions over several years and laundered $122,000 in drug trafficking proceeds through his bank account. Defendant also used Southwest Cargo to ship marijuana to co-conspirators in destination cities throughout the country. Set forth below are some examples of defendant's specific offense conduct and evidence of his communications coordinating and directing the airport smuggling and drug trafficking operation.

### A. Defendant Violated Airport Security and Provided an Unscreened Bag Containing Marijuana to Outbound Passenger Major Session

On July 13, 2013, defendant violated airport security and provided an unscreened bag containing 5.643 kilograms of marijuana to co-defendant Major Session. After receiving the unscreened luggage from defendant, Session flew to Phoenix, Arizona, on his way to Little Rock, Arkansas. Session was stopped by police in the Phoenix Airport, however, and the marijuana was seized. Session was arrested

---

[1] References to the sworn testimony in that affidavit will be by page number at the bottom (not the ECF page number at the top) and paragraph and cited as Cmplt. at page, ¶. The affidavit sets forth the facts of defendant's offense conduct in greater detail than the PSR.

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00290 PJH                               1

but eventually released.  (Cmplt. at 18-19, ¶¶ 57-59).

### B. Defendant Violated Airport Security and Provided an Unscreened Bag Containing Marijuana to Outbound Passenger Ronnell Molton

On October 29, 2013, defendant violated airport security and provided an unscreened bag containing 4.712 kilograms marijuana to co-defendant Ronnell Molton.  Molton then flew to New Orleans, Louisiana, and was arrested.  Molton's mobile telephone was seized and subsequently searched.  The phone contained text messages between Molton and defendant, as summarized below.

<u>August 22, 2013</u>
MAYFIELD:  Bro how many times u wanna hoop every month
MOLTON:     Twice
MAYFIELD:  My nigga got a one way for 225
MAYFIELD:  When u want it
MOLTON:     Today, and can we go Saturday still

During this text message exchange, defendant coordinated the smuggling of narcotics through the Oakland Airport with Molton.  Specifically, defendant wanted to know how many times per month Molton wanted to transport narcotics to which Molton answered twice.  Defendant then stated that he had a one way airline ticket for $225.  Finally, Molton stated that he would purchase the ticket that day but would fly on Saturday.  (Cmplt. at 22, ¶¶ 67-68).

<u>August 24, 2013</u>
MOLTON:     I need that bag back to bra!
MAYFIELD:  Lol fuck u this mine
MOLTON:     Lol. Just like the rest of them huh!
MOLTON:     That`s about two hundred right there
MOLTON:     Tell cuz im at the booth
MOLTON:     Getting back on in Denver
MOLTON:     Just landed

During this text message exchange, Molton asked defendant to return one of the bags that they swapped in the airport but defendant refused.  Defendant then joked that the bag was his and Molton responded "like the rest of them" which indicated that the two had exchanged bags in the airport numerous times and that defendant had kept the bags.  (Cmplt. at 23, ¶ 69).

<u>September 22, 2013</u>
MAYFIELD:  If u want to go in the am still let me no
MOLTON:     Monday or Tuesday
MAYFIELD:  Mon

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00290 PJH                                      2

|          |             |                                                                                              |
|----------|-------------|----------------------------------------------------------------------------------------------|
| MAYFIELD: | Bra we gotta be on fasho in day am I picked up |
| MOLTON:   | Bra the first flight is sold out, so do you want to go and I`ll leave tomorrow |
| MOLTON:   | Are I`ll take the next flight |
| MAYFIELD: | We gotta go up do u have yo fit ready |
| MOLTON:   | Yeah, you got my bag? |

During this text message exchange, defendant coordinated Molton's departure to travel to a destination city with marijuana. Specifically, he told Molton to leave Monday. (Cmplt. at 23-24, ¶ 70).

### C. Defendant Violated Airport Security and Provided an Unscreened Bag Containing Marijuana to Outbound Passenger Clyde Jamerson, Jr.

On February 10, 2014, defendant violated airport security and provided unscreened luggage containing about seven kilograms of marijuana to Clyde Jamerson, Jr., who flew to Little Rock and was arrested. Jamerson was meeting in Little Rock with co-defendants Major Session and Travon Baker to further distribute the marijuana. Mobile telephones belonging to Jamerson and Session were subsequently seized and searched. Text messages between defendant and Jamerson and defendant and Session were recovered and are summarized below.

February 9, 2014, at 9:40 p.m.
MAYFIELD:     Zf4lxm

February 10, 2014, from 3:49 a.m. to 4:02 a.m.
MAYFIELD:     Cuzo
JAMERSON:     Fasho
MAYFIELD:     Are u around
JAMERSON:     Almost there
MAYFIELD:     Were to the station
JAMERSON:     Yea
MAYFIELD:     Ok same one
JAMERSON:     Yup
JAMERSON:     Here

February 10, 2014, at 4:30 a.m.
JAMERSON:     Here
MAYFIELD:     Ok

February 10, 2014, from 4:49 a.m. to 5:55 a.m.
MAYFIELD:     Let me no when u on
JAMERSON:     Aight don't let your phone go dead
MAYFIELD:     Aite
JAMERSON:     I'm on

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00290 PJH                                     3

|  |  |
|---|---|
| MAYFIELD: | Fasho |

February 10, 2014, from 8:44 a.m. to 8:54 a.m.
| | |
|---|---|
| JAMERSON: | On my way tell Ol boy to have some room monkey |
| MAYFIELD: | Lol ok |
| JAMERSON: | Lol see if you can put something on line for Friday |
| MAYFIELD: | Ok are u bout to board |
| JAMERSON: | Right now |
| MAYFIELD: | Ok |
| JAMERSON: | I'll hit you when I touch |

February 10, 2014, at 11:40 a.m.
| | |
|---|---|
| JAMERSON: | Just landed |

February 10, 2014, from 12:42 p.m. to 4:17 p.m.
| | |
|---|---|
| MAYFIELD: | He just got there bruh |
| SESSION: | Who is it cus |
| MAYFIELD: | Cj |
| SESSION: | Wat da number |
| MAYFIELD: | [provides Jamerson's telephone number ending in 6603] |
| MAYFIELD: | What's goin on |
| MAYFIELD: | Did yall get pulled over |

In these text messages, defendant coordinated Jamerson's travel to Little Rock and communicated with both Jamerson and Session to arrange for them to meet so that the marijuana could be further sold in Arkansas. (Cmplt. at 24-31, ¶¶ 71-90).

### D.   Defendant Shipped Marijuana Via Southwest Cargo to New Orleans

Defendant also used his privileges as a Southwest employee to ship parcels containing marijuana via Southwest Cargo. In fact, on June 9, 2014, defendant shipped a package containing eleven kilograms of marijuana to co-defendant Brandon Davillier, who was arrested when he tried to pick up the cargo at the airport in New Orleans. Davillier's mobile phone was seized and searched. Text messages between Mayfield and Davillier are summarized below.

DAVILLIER and MAYFIELD, Unknown Date and Time
| | |
|---|---|
| DAVILLIER: | Western union |
| DAVILLIER: | 330 |
| DAVILLIER: | Bout to go to walmart in a min |
| DAVILLIER: | Bout to now. Send me the air bill |
| DAVILLIER: | I'm at walmart now |
| DAVILLIER: | Bout to do it in a few |
| DAVILLIER: | Go to western union. Walmart system down |
| DAVILLIER: | I just pulled up to western. Bout to send 500 |

| | | |
|---|---|---|
| DAVILLIER: | | I'm in line |
| DAVILLIER: | | Bout to meet up with my boy to get the rest yo money |
| DAVILLIER: | | [number ending in 2889] |
| DAVILLIER: | | Sent from me new orleans |
| DAVILLIER: | | Because I called so early? |
| DAVILLIER: | | Damn son. My bad |
| DAVILLIER: | | 330 Right? |

In these text messages from Davillier to defendant, Davillier made arrangements to send money, via Western Union and Walmart, to defendant as payment for narcotics received or the proceeds of narcotics sold. (Cmplt. at 36, ¶ 112).

<u>DAVILLER and Unknown co-conspirator at Unknown Date and Time</u>

| | | |
|---|---|---|
| DAVILLIER: | | I talked to ki. its all good |
| DAVILLIER: | | Td |
| DAVILLIER: | | Call kiki |
| DAVILLIER: | | [phone number ending in 8859] |
| DAVILLIER: | | Aite |
| DAVILLIER: | | This run went smooth |
| DAVILLIER: | | once it td out Here |
| DAVILLIER: | | I coulda sent u money yesterday to send something out |
| DAVILLIER: | | [redacted address in] slidell,la 70461 |

In these text messages from Davillier to an unknown co-conspirator, Davillier described narcotics trafficking and referenced defendant by his moniker. (Cmplt. at 36-37, ¶¶ 114-115).

<u>May 26, 2014: MAYFIELD and DAVILLIER</u>

| | | |
|---|---|---|
| MAYFIELD: | | Aite |
| MAYFIELD: | | Yep |
| MAYFIELD: | | Did u pick that up yet |
| MAYFIELD: | | I have to go to the house to see if u can just use yo id |
| MAYFIELD: | | 67385872 |
| MAYFIELD: | | Dude let me no when u send it cuz they closing early |
| MAYFIELD: | | Dude they close early so u gotta do it like now |
| MAYFIELD: | | When |

In these text messages from defendant to Davillier, defendant asked Davillier if he picked up a cargo package that defendant sent via Southwest Cargo on May 26, 2014 (as shown in the chart below, defendant shipped numerous packages via Southwest Cargo to Davillier, including on May 26, 2014). The Southwest Cargo manifest showed the airbill number for this cargo shipment was 67385872. defendant also instructed Davillier to send a payment for the narcotics, likely via wire transfer. (Cmplt. at 37-38, ¶¶ 116-117).

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00290 PJH                                                5

<u>June 9, 2014: DAVILLIER and MAYFIELD</u>
MAYFIELD:     My bad they said it won't get there 330
MAYFIELD:     66127438
MAYFIELD:     My nigga just hit me he said its in route
MAYFIELD:     Let me check
MAYFIELD:     61151311
MAYFIELD:     Flt526

In these text messages from defendant to Davillier, defendant coordinated Davillier's receipt of the cargo shipment containing marijuana that was ultimately seized on June 9, 2014, as indicated by the flight number (526) and airbill number (61151411) matching the flight number and airbill number of the shipment seized in New Orleans. (Cmplt. at 38-39, ¶¶ 120-121).

Indeed, defendant used Southwest Cargo on numerous occasions to send shipments of marijuana to other co-conspirators. Set forth below is a chart reflecting defendant's shipments.

| Date | Description | From | To | Shipper | Picked Up By | Received |
|---|---|---|---|---|---|---|
| 12/3/2013 | Wearing Apparel | Oakland | Raleigh Durham | Mayfield | CJameson | 12/3/2013 |
| 12/11/2013 | Wearing Apparel | Oakland | Little Rock | Mayfield | CJameson | 12/11/2013 |
| 12/19/2013 | Wearing Apparel | Oakland | Raleigh Durham | Mayfield | CJamerson | 12/19/2013 |
| 12/27/2013 | Wearing Apparel | Oakland | Little Rock | Mayfield | CJamerson | 12/27/2013 |
| 12/27/2013 | Electronic Equip. | Oakland | Philadelphia | Mayfield | JAustin | 12/27/2013 |
| 12/31/2013 | Artwork | Oakland | New Orleans | Mayfield | KWilson | 12/31/2013 |
| 1/7/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | KWilson | 1/7/2014 |
| 1/14/2014 | Wearing Apparel | Oakland | Little Rock | Mayfield | CJamerson (Session Listed as Recipient) | 1/14/2014 |
| 1/17/2014 | Wearing Apparel | Oakland | Atlanta | Mayfield | CJamerson | 1/17/2014 |
| 1/22/2014 | Wearing Apparel | Oakland | Charlotte | Mayfield | JWilliams | 1/22/2014 |
| 3/7/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | BDavillier | 3/7/2014 |
| 3/20/2014 | Artwork | Oakland | Columbus | Mayfield | BDavillier | 3/21/2014 |
| 3/20/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | JHart | 3/20/2014 |
| 3/30/2014 | Artwork | Oakland | Cleveland | Mayfield | MPorter | 3/31/2014 |
| 4/2/2014 | Wearing Apparel | Oakland | LaGuardia (NY) | Mayfield | BDavillier | 4/2/2014 |
| 4/2/2014 | Wearing Apparel | Oakland | LaGuardia (NY) | Mayfield | BDavillier | 4/2/2014 |
| 4/17/2014 | Wearing Apparel | Oakland | Dallas | Mayfield | BButler | 4/17/2014 |
| 5/3/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | BDavillier | 5/3/2014 |
| 5/6/2014 | Wearing Apparel | Oakland | Fort Lauderdale | Mayfield | AWomack | 5/6/2014 |
| 5/13/2014 | Artwork | Oakland | New Orleans | Mayfield | BDavillier | 5/13/2014 |
| 5/26/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | BDavillier | 5/26/2014 |
| 6/9/2014 | Wearing Apparel | Oakland | New Orleans | Mayfield | BDavillier | 6/9/2014 |

(Cmplt. at 39, ¶ 123).

   E.   **Indictment, Superseding Information, and Guilty Plea**

On May 15, 2015, defendant was charged in a criminal complaint along with other co-conspirators with conspiracy to distribute 100 kilograms and more of marijuana. On May 28, 2015,

defendant was indicted for various offenses relating to narcotics trafficking and airport security violations. (PSR ¶ 1). On January 16, 2018, a three-count superseding information was filed charging defendant with narcotics trafficking, violating airport security, and money laundering conspiracy. (PSR ¶ 2). On February 21, 2018, defendant pleaded guilty pursuant to a plea agreement. (PSR ¶ 3).

In his plea agreement, defendant admitted that he conspired to: (1) distribute, and possess with intent to distribute, more than 100 kilograms of marijuana; and (2) to enter an airport area in violation of security requirements. Defendant also admitted that, in furtherance of that conspiracy, he used his access as a baggage handler for Southwest Airlines to smuggle bags containing marijuana into the airport and distributed that marijuana to outbound passengers in violation of airport security requirements. Defendant specifically admitted that he smuggled bags containing marijuana to outbound passengers who had already cleared the TSA security checkpoint on at least 40 occasions. Defendant admitted that he distributed no less than 250 kilograms of marijuana to outbound passengers in violation of airport security requirements and that in doing so he abused a position of public and private trust. Defendant also admitted shipping no less than 100 kilograms of marijuana via Southwest Cargo from the Oakland Airport throughout the United States.

Finally, defendant admitted that in order to receive the proceeds of marijuana sold outside of California while being located in Northern California, he conspired with others to launder money. Specifically, defendant admitted that individuals deposited cash proceeds from the sale of smuggled marijuana in amounts under $10,000 into his Chase bank accounts at bank branches in Texas and that he then withdrew the deposited narcotics trafficking proceeds as cash in Northern California. From 2012 to 2013, defendant admitted that no less than $50,000 in drug trafficking proceeds were deposited into his accounts at bank branches in Texas and that he withdrew most of those deposited funds in Northern California. (Docket No. 497, Plea Agreement at 2-4, ¶ 2).

III.   **SENTENCING GUIDELINES CALCULATIONS**

The parties agreed to the following guidelines calculations in the plea agreement:

    a.    Base Offense Level:    24
U.S.S.G. §§ 2D1.1(a)(5), (c)(8); 2S1.1(a)(1) (at least 100 but less than 400 kilograms of marijuana and money laundering)

|   |   |   |   |
|---|---|---|---|
| b. | Safety valve, U.S.S.G. § 2D1.1(b)(17): | | - 2 |

(If (1) the Court does not apply an aggravating role enhancement pursuant to U.S.S.G. § 3B1.1; (2) Probation finds that I meet the requirements of U.S.S.G. §§ 5C1.2(a)(1)-(4); and (3) the Government finds that I have truthfully debriefed within the meaning of § 5C1.2(a)(1)(5))

    c.    Conviction under 18 U.S.C. § 1956, U.S.S.G. § 2S1.1(b)(2)(B):    + 2

    d.    Abuse of Position of Trust, U.S.S.G. § 3B1.3    + 2

    e.    Acceptance of Responsibility:    - 3

The government reserved the right to argue that additional sentencing enhancements apply, namely, a three-level enhancement for aggravating role under U.S.S.G. § 3B1.1(b) and a two-level enhancement for criminal livelihood under U.S.S.G. § 2D1.1(b)(15)(E). (PSR ¶ 4).

    Section 3B1.1(b) applies if "the defendant was a manager or supervisor (but not an organizer or a leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." When a defendant supervises other participants, he or she need exercise authority over only one of the other participants to merit the adjustment. *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000). In addition, "[a] single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement." *Id.* at 1051. Here, defendant managed and coordinated a sophisticated airport drug smuggling operation involving numerous co-conspirators over several years and made over $120,000 doing so. Defendant controlled the environment and timeframe under which unscreened bags were provided to outbound passengers, coordinated their travel and communication with co-conspirators, and reaped a financial windfall for his efforts while using his employment as the means to commit his crimes.

    Section 2D1.1(b)(15)(E) applies, where, as here, defendant receives an aggravating role adjustment and committed the offense as part of a pattern of criminal conduct engaged in as a livelihood as defined in U.S.S.G. § 4B1.3. Pattern of criminal conduct "means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses." (*see* app. note 1). Engaged in as a livelihood "means that (A) the defendant derived income

from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law;[2] and (B) the totality of the circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.*, the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct)." (*see* app. note 2).

Here, from July 2012, through August 2013, $122,900 in cash (of which defendant admits that at least $50,000 was drug trafficking proceeds; both figures far in excess of the $14,500 threshold amount) was deposited into defendant's accounts and he withdrew $97,466 in cash. (Cmplt. at 53-56, ¶¶ 168-169). By contrast, his wages as a baggage handler in 2012 and 2013 totaled only $9,760.71 and $7,939.81, respectively (for a total of $17,700.52). (PSR ¶ 40). Clearly, the criminal livelihood enhancement applies to defendant.

The USPO agrees with the government's guidelines calculations and applied the enhancements for aggravating role and criminal livelihood. (PSR ¶¶ 4, 46, 50). Accordingly, the government and the USPO agree that defendant's total offense level is 30. (PSR ¶¶ 45-56). Defendant falls within criminal history category I. (PSR ¶ 60). Thus, the defendant's guidelines range is 97-121 months. (PSR ¶ 105). The government recommends a high-end guideline sentence of 120 months' imprisonment. Such a sentence properly reflects the breathtaking scope of defendant's offense conduct and his extraordinary breach of public and private trust while also serving as a deterrent for other airport insiders who might consider using their positions to violate airport security measures for profit.

## IV.   STATUTORY SENTENCING FACTORS

### A.   Nature and Circumstances of the Offense

The nature and circumstances of the offenses demonstrate the need for a high-end 120-month sentence. Defendant abused his position as a Southwest Airlines baggage handler to oversee a massive conspiracy to violate airport security and distribute hundreds of kilograms of marijuana in unscreened bags and cargo shipments throughout the United States. Defendant repeatedly used his position to

---

[2] Since July of 2009, the federal minimum wage has been $7.25 per hour. *See* www.dol.gov/general/topic/wages/minimumwage. Two thousand times that wage is $14,500.

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00290 PJH                               9

violate airport security measures for profit in a stunning breach of trust.  The nature and circumstances of this offense clearly justify a high-end guideline sentence of 120 months.

### B. History and Characteristics of the Defendant

Defendant has previously been arrested for vehicle theft, brandishing a firearm replica, obstructing an officer, and disorderly conduct, but sustained no convictions.  (PSR ¶¶ 63-66).  However, it is defendant's lack of criminal history and employment with Southwest Airlines that enabled him to operate a massive criminal conspiracy to smuggle narcotics in violation of airport security.

### C. Need to Reflect the Seriousness of the Offenses

The offenses in question involve a long-term conspiracy to violate airport security in an effort to engage in nationwide narcotics trafficking.  A high-end guideline sentence of imprisonment sufficiently reflects the seriousness of the offenses in this particular case.

### D. Deterrence of Criminal Conduct

By imposing a 120-month sentence on defendant, the Court has the opportunity to have a strong specific and general deterrent effect.

### E. Need to Protect the Public

The public needs to be protected from airport insiders, like defendant, who are willing to use their positions of trust at the nation's airports for personal profit.

## V. CONCLUSION AND SENTENCING RECOMENDATION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to a 120-month term of imprisonment (on all three counts to run concurrently), four years of supervised release with conditions to be fixed by the Court and agreed to by defendant in his plea agreement, no fine, a $300 special assessment, and a forfeiture money judgment of $50,000.

DATED: August 8, 2018                                   Respectfully Submitted,

ALEX G. TSE
United States Attorney

_____/S/_____
GARTH HIRE
Assistant United States Attorney