STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney

    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone: (415) 436-6559
    Facsimile:  (510) 637-3724
    E-Mail:     Garth.Hire@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 15-00290 PJH |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE FROM CUSTODY |
| v. | |
| KEITH RAMON MAYFIELD, | |
| Defendant. | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

## I. INTRODUCTION

Defendant Keith Ramon Mayfield (defendant) is currently serving a 30-month sentence for his crimes stemming from his role in a drug trafficking operation in which he used his position as a Southwest Airlines baggage handler to smuggle marijuana onto outbound commercial airliners while avoiding inspection by the Transportation Security Administration. Defendant is presently housed at FCI Atwater, with an anticipated release date of October 19, 2021. He previously sought relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or home confinement. (ECF 586). The government opposed defendant's motion. (ECF 596).

The Court denied the motion with leave to file a second motion for compassionate release on limited grounds relating to a potentially undiagnosed respiratory illness that could be discovered through what was erroneously believed to be a recommended but not yet authorized MRI. (ECF 598). As explained below, based on confusion regarding defendant's medical records, it appears that there is no recommended MRI of defendant's chest that is pending but not yet authorized. And, in any event, defendant recently contracted and recovered from COVID-19 without objective symptoms. Defendant again seeks compassionate release. (ECF 602). The government again opposes release and this Court should deny defendant's renewed motion.

## II. RECENT FACTUAL AND PROCEDURAL DEVELOPMENTS

The government set forth the factual and procedural history regarding defendant's offense conduct, conviction, and sentence in its original opposition to defendant's first compassionate release motion. (ECF 596 at 2-3). Rather than repeats those facts, the government incorporates them by reference as the Court is familiar with this matter. Instead, this section will highlight the factual and procedural history of defendant's efforts to obtain an early release from prison.

On August 8, 2020, defendant, through his counsel, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). (ECF 586). In his motion, defendant cited numerous requests that he made to prison staff for home confinement. (ECF 586 at 8-9; ECF 587-3). Defendant also stated that he suffered from childhood asthma and set forth a variety of health ailments that he is dealing with while

incarcerated. In particular, he noted that while an MRI had been recommended, due to COVID, that MRI had not been conducted. (ECF 587 at 4).

On September 10, 2020, defendant had *two* off-site MRIs that were scheduled for the *same day*. (Hire Decl. ¶ 2, Ex. A at 27-28, 38, 76-77, 79-80). One MRI was of his cervical spine. (Ex. A at 76-77). The second MRI was of his left shoulder. (Ex. A at 79-80). A physician discussed the results of these MRIs with defendant on November 14, 2020. (Ex. A at 23). Defendant was diagnosed with bursitis of the shoulder, cervical disc disorder, radiculopathy, and osteoarthritis. (Ex. A at 27). At present, there is no indication in defendant's medical records that there has ever been any recommendation for any additional MRI of defendant's chest to diagnose a respiratory issue. (*See* Ex. A). Thus, there is no MRI that has been recommended, but not yet performed – making defendant's motion moot. (*See* Ex. A).[1]

On September 27, 2020, the government opposed defendant's motion. (ECF 596). The government noted that defendant had failed to exhaust his administrative remedies because, although he requested home confinement, he had not actually requested a reduction in sentence due to COVID-related health concerns. (ECF 596 at 2, fn. 2). The government also argued that defendant did not have significant health conditions that, in conjunction with the COVID-19 pandemic, would present extraordinary and compelling reasons to justify his early release. (ECF 596 at 7-8). The government also noted that after his motion was filed on August 8, 2020, defendant did have an MRI on his cervical spine on September 10, 2020, and was diagnosed with bursitis of the shoulder, cervical disc disorder, and osteoarthritis. (ECF 596 at 2, fn. 1). Finally, the government argued that the 3553(a) factors did not support early release. (ECF 596 at 8).

On October 5, 2020, defendant filed a reply brief supported by a declaration from counsel. (ECF 597). Although acknowledging that defendant had an MRI, defendant claimed that he did not have a

---

[1] It appears that there was confusion on defendant Mayfield's part as to the nature and number of MRIs ordered and performed; most likely stemming from the fact that two MRIs of two different body parts were conducted on the same day. Defendant Mayfield appears to have been under the mistaken impression that he had only one MRI, when he in fact had two, and that a chest MRI had been ordered, when in fact one had not. (ECF 597 at 5, ¶ 2).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

2

second recommended MRI of his chest and raised a concern that his respiratory complaints could make him vulnerable to COVID-19. (ECF 597 at 2).

On that same day of October 5, 2020, this Court denied defendant's motion with leave to file a second motion for compassionate release on limited grounds. (ECF 598). First, the Court noted that defendant had failed to "seek release on the ground of compassionate release in light of health concerns due to the COVID-19 pandemic." (ECF 598 at 3). The Court then stated that the "government waived its objection to the failure to exhaust administrative remedies." *Id*. The government believes that it made and preserved that objection in its original opposition. (*See* ECF 596 at 2, fn. 2).

The Court then found that extraordinary and compelling reasons did not exist to reduce defendant's sentence because "defendant does not present evidence of having comorbidities or medical conditions that are identified by the CDC as risk factors for COVID-19 complications." (ECF 598 at 3-4). The Court also noted that defendant did not have a present condition of moderate to severe asthma that would put him at heightened risk of severe illness from COVID-19. (ECF 598 at 4).

The Court then noted that an additional chest MRI had not been conducted and stated that "[i]f a respiratory illness were identified as the source of defendant's chest pains and shortness of breath, such a medical condition may support an extraordinary and compelling reason to warrant compassionate release, but the medical diagnosis is speculative at this juncture." (ECF 598 at 4). The Court concluded that "defendant has not demonstrated that he suffers from a serious physical or medical condition that substantially diminishes his ability to provide self-care . . . to demonstrate extraordinary and compelling reasons to warrant compassionate release." (ECF 598 at 4). Finally, the Court granted leave to file a second motion for compassionate release, "if warranted, on the sole ground that the concerns about a potential respiratory illness identified by BOP prison medical staff has been left undiagnosed and/or untreated, in combination with a showing of a heightened risk of contracting COVID-19 and suffering severe complications while incarcerated." (ECF 598 at 4).

On March 1, 2021, defendant tested positive for COVID-19. (Ex. A at 61). On March 11, 2021, defendant filed a renewed motion for compassionate release. (ECF 602). In his motion, defendant

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

noted that he had yet to have an MRI on his chest and that he continued to complain of chest pains and shortness of breath. (ECF 602 at 3).

After contracting COVID-19, defendant displayed no objective symptoms (despite his subjective complaints of body aches and chills). (Ex. A at 2, 10-11). From March 1 to March 14, defendant's temperature ranged from 96.3 degrees to 98.0 degrees. (Ex. A at 10, 50). From March 2 to March 10, defendant's oxygen saturation ranged from 96% to 98%. (Ex. A at 10-11, 51-52). Thus, defendant essentially showed no objective adverse health effects from the virus and was eventually removed from quarantine and on March 18, 2021, returned to his normal custodial camp. (Hire Decl. ¶ 3; Ex. A at 1, 2, 6).

There should be no further concern that some undiagnosed respiratory illness could cause defendant to suffer severe complications from COVID-19 as he has now fully recovered from the virus. In addition, there is no recommended but unperformed MRI. Simply put, extraordinary and compelling reasons are not present and compassionate release is clearly unwarranted.

### III.   ARGUMENT

#### A.   Defendant Has Not Satisfied the 30-Day Statutory Prerequisite for Consideration of his Motion and this Court Must Enforce this Claims-Process Rule Once Invoked

Defendant has not submitted a release request based on COVID-19 to BOP. Instead, as the government argued in its original opposition, defendant made a request for home confinement unrelated to COVID-19 and thus failed to administratively exhaust his remedies. Under the clear text of 18 U.S.C. § 3582(c)(1)(A), this Court therefore cannot modify defendant's sentence. This statutory imperative is a mandatory claim-processing rule that entitles the party invoking it—here, the government—to relief.

##### 1.   Failure to exhaust mandates dismissal

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, provides in pertinent part that the court "may not modify a term of imprisonment once it has been imposed except" upon a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," where such a reduction also meets other specified requirements.

To exhaust an inmate's administrative remedies, he or she must initiate a request in writing to the Warden detailing "the extraordinary or compelling circumstances that the inmate believes warrant consideration" and the inmate's "proposed release plans" with several necessary details. 28 C.F.R. § 571.61 (implementing Section 3582(c)(1)(A)). BOP's Program Statement sets forth procedures for implementing Section 3582 states: "A request for a RIS is considered 'submitted' for the purposes of 18 U.S.C. § 3582(c)(1), when received by the Warden in accordance with this section." See https://www.bop.gov/ policy/progstat/5050_050_EN.pdf. Then, the inmate must either wait 30 days to appeal to this Court or exhaust two additional internal levels of appeal within the agency under 28 C.F.R. § 542.15(a).

If a defendant fails to meet the statute's administrative exhaustion requirements, the statute's plain language bars relief: it prohibits a court from modifying a sentence "except" when the requirements are met. This language represents a mandatory claim-processing rule that "a court must enforce [ ] if a party properly raises it." *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (stating that claim-processing rules are those that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times" and quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (internal quotation and alterations omitted)). "'Where Congress specifically mandates' it, exhaustion is not merely appropriate but 'required.'" *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). The government raises the rule here, and it must be enforced. *See United States v. Alam*, 960 F.3d 831, 833–36 (6th Cir. 2020) (holding that § 3582(c)(1)(A)'s exhaustion requirement was mandatory claim-processing rule that must be enforced if government raised it).

"A court may not excuse a defendant's failure to comply with a statutory exhaustion requirement." *United States v. Fuentes*, 834 F. App'x 414, 415 (9th Cir. 2021) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016)). Because Congress—and not the courts—imposed the exhaustion requirement in § 3582(c)(1), the Court is without authority to waive it, notwithstanding COVID-19 and

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

5

the current health crisis. While judicially-created exhaustion requirements may sometimes be excused by judge-created exceptions, it is well settled that a court may not ignore a statutory command such as that presented in Section 3582(c)(1)(A). *Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("[T]the Supreme Court has made clear that if exhaustion 'is a statutorily specified prerequisite'—as opposed to a judicially created one—'[t]he requirement is . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility[.]'" (quoting *Weinberger v. Salfi*, 422 U.S. 749, 755 (1975)). The Sixth Circuit recently analyzed this very claim in the context of the COVID-19 pandemic and rejected it because "judge-made exceptions to judge-made exhaustion doctrines . . . are birds of a different feather." *Alam*, 960 F.3d at 832.

The Supreme Court recently reaffirmed the principle that courts may not excuse a failure to exhaust absent clear direction from Congress: "No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross*, 136 S. Ct. at 1857. Thus, a statutory exhaustion scheme such as is included in § 3582(c)(1) is a "mandatory exhaustion regime[ ], foreclosing judicial discretion" and requires dismissal where raised. *Id.*

**2.    Defendant has not exhausted his administrative remedies**

Here, defendant did not meet the administrative exhaustion requirements of § 3582(c)(1)(A). Defendant did not file an administrative motion with the warden for compassionate release. Instead, he made requests for home confinement unrelated to COVID-19. Accordingly, defendant's motion must be dismissed for failure to exhaust under the mandatory claim-processing rule in § 3582(c)(1)(A).

**B.    Reduction of Defendant's Sentence is Not Warranted**

Although the COVID-19 pandemic is an extraordinary world event, defendant has once again failed to show that that its impact on him, specifically, warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because he is not suffering from a medical condition that the CDC has identified

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

as particularly at risk for severe symptoms if he were to *re-contract* COVID-19, and re-balancing the Section 3553(a) factors does not indicate the defendant should be released immediately as he seeks.[2]

As an initial matter, while defendant did test positive for COVID-19, he has now recovered from the virus, vitiating any medical emergency. Defendant's concern that his underlying health conditions would contribute to "serious complications and death" from COVID-19 is belied by the actual facts of his case. Defendant did contract COVID-19, despite BOP's best efforts to contain the virus. Defendant tested positive for COVID-19 on March 1, 2021, was quarantined, was monitored during infection, showed no objective symptoms, recovered, and on March 18, 2021, was returned to his custodial camp. During his infection defendant's temperature and oxygen saturation were normal. These facts are a far cry from the severe consequences that defendant presumed in his motion would occur if he were infected. *See United States v. Kelley*, 15-cr-00444-CRB-2, 2020 WL 2747887, at *2 (N.D. Cal. May 27, 2020) (denying compassionate release where inmate tested positive for COVID-19 but had already recovered).

The science surrounding COVID-19 and the possibility of reinfection is still developing, but defendant's recovery is an extremely positive sign. Foremost, and most importantly, it means that he has endured the illness seemingly without substantial adverse health outcomes and has returned largely to his baseline health status. So far, the CDC has determined that COVID-19 acts somewhat like other viruses, meaning reinfections are rare and "infrequent," and "the probability of [COVID-19] reinfection is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants[,]" although again, the science is still developing on this particular coronavirus. In any event, if defendant were to argue that he may become infected again and, unlike his first infection, he may suffer severe symptoms as a result, the Court should reject his argument. Weighing the many other considerations at play, the Court should not find that the uncertain science of COVID-19 meets the statutory requirements for compassionate release.

---

[2] In its original opposition, the government extensively set forth the law regarding compassionate release. The government incorporates those citations by reference, as well as the other arguments and citations made in its original opposition, to avoid verbatim repetition.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY

7

In addition, as discussed at length in its original opposition and as the Court found in its order, none of defendant's currently diagnosed health conditions put him at greater risk should he re-contract COVID-19 and thus compassionate release is not warranted.

Finally, the government continues to argue, as the Court found in its order, that the 3553(a) factors in this case militate against defendant's early release from prison.

## IV.   CONCLUSION

Defendant has already contracted and recovered from COVID-19 without any apparent objective adverse health effects. There is no recommended but unperformed chest MRI as defendant has claimed. In addition, defendant has not presented evidence of a serious medical condition that substantially impairs his ability to provide self-care or any other extraordinary or compelling reason to warrant a reduced sentence. Nor do the 3553(a) factors support early release. This Court should therefore deny defendant's renewed motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i).

DATED: March 22, 2021            Respectfully submitted,

                                 STEPHANIE M. HINDS
                                 Acting United States Attorney

                                    /s/
                                 GARTH HIRE
                                 Assistant United States Attorney